# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JONATHAN DAVID GHERTLER,**

    **Petitioner,**

**v.**

    **Case No: 6:12-cv-809-Orl-28DAB**
    **(6:08-cr-90-Orl-28DAB)**

**UNITED STATES OF AMERICA,**

    **Respondent.**

## ORDER

This cause is before the Court on the motion to vacate, set aside, or correct an illegal

sentence pursuant to 28 U.S.C. § 2255 (Doc. 1) filed by Petitioner Jonathan David

Ghertler.[1] In his motion, Petitioner alleges thirteen claims,[2] most of which are claims of

ineffective assistance of counsel. For the following reasons, the Court concludes that

Petitioner is not entitled to relief on any of these claims.

---

[1] Petitioner filed a memorandum of law (Doc. 9) in support of his motion. The Government filed a response (Doc. 15) to the motion in compliance with this Court's instructions, (see Order, Doc. 10), and with the *Rules Governing Section 2255 Proceedings for the United States District Courts*. Petitioner then filed a reply (Doc. 19) and several addenda, supplements, and declarations (Docs. 25, 30, 33, 41, & 47).

[2] Petitioner lists four grounds for relief in his motion—ineffective assistance of trial counsel, ineffective assistance of appellate counsel, prosecutorial misconduct, and abuse of judicial discretion. (See Doc. 1). However, some of these alleged grounds contain numerous subclaims; for example, the ineffective assistance of trial counsel ground includes ten subclaims. (See id.). This Order addresses each of those ten subclaims separately as well as the other three grounds, for a total of thirteen claims. Although Petitioner listed thirteen claims in his motion (Doc. 1), he did not argue all thirteen of those claims in his memorandum (Doc. 9), and the Government responded only to the claims that Petitioner argued in that memorandum. (See Doc. 15).

## I.   Procedural History

A Criminal Complaint charging Petitioner with committing wire fraud in violation of 18 U.S.C. § 1343 was filed on December 6, 2006. (Case No. 6:08-cr-90-28DAB, Doc. 1).[3] Petitioner was arrested and then released on a $50,000 bond in January 2007. (See Crim. Case Docs. 7, 9, & 10). In April 2007, Petitioner violated the terms of his pretrial release by absconding, and a warrant for his arrest was issued. (See Crim. Case Docs. 12 & 13). Ultimately, Petitioner was re-arrested in January 2008 in New Mexico.

On April 16, 2008, a grand jury charged Petitioner by Indictment with eight counts of wire fraud[4] based on conduct occurring from July 2006 to December 2007 with regard to seven named victim companies.[5] (Indictment, Crim. Case Doc. 18). The Indictment also referred to "fourteen businesses" that Petitioner allegedly deceived. (Id. ¶ 15). In July 2008, just days before Petitioner's scheduled trial, the grand jury returned a Superseding Indictment (Crim. Case Doc. 41). The Superseding Indictment also charged eight counts of wire fraud, named the same seven victim businesses, and was identical to the original Indictment except in two respects: (1) the forfeiture amount in the Superseding Indictment

---

[3]Hereinafter, documents from Case No. 6:08-cr-90-Orl-28DAB will be referred to as "Crim. Case Doc." followed by the number.

[4] Each of these counts charged a violation of 18 U.S.C. § 1343. As explained in the Presentence Investigation Report ("PSR"), Petitioner "perpetrated a scheme to defraud numerous corporate entities." (PSR at 1 ¶ 5). "As part of the scheme to defraud, [Petitioner] would conduct research on a company, contact the company via telephone claiming to be general counsel for the corporation and persuade an employee or treasurer to wire funds to him, for purposes of an urgent business transaction." (Id.).

[5] Notably, the charges in the Indictment pertain in part to conduct of Petitioner that occurred after he had already been charged with wire fraud in the Complaint and after he absconded from the Middle District of Florida. In other words, even after being charged with wire fraud and arrested, Petitioner continued to commit wire fraud.

is $250,000 instead of $766,500 as alleged in the original Indictment, and (2) the language of paragraph 15 of the original Indictment—which referred to "fourteen businesses[6]—was not included in the Superseding Indictment. On July 28, Petitioner entered a guilty plea to the eight counts charged in the Superseding Indictment without a plea agreement. (Crim. Case Docs. 54 & 62). The Court accepted Petitioner's guilty plea and adjudicated him guilty. (Crim. Case Doc. 87).

The Court conducted a sentencing hearing during five days in November and December 2008 and January 2009 at which fourteen witnesses, including Petitioner, testified. (See Hr'g Trs., Crim. Case Docs. 112, 125-128). After calculating an advisory Guidelines sentencing range of 151 to 188 months,[7] the Court sentenced Petitioner to eight concurrent terms of 185 months in prison. (See Crim. Case Docs. Doc. 88 & 112). Judgment was entered on January 30, 2009. (Crim. Case Doc. 91). Petitioner appealed, raising several issues. The Eleventh Circuit Court of Appeals found merit to one issue and affirmed in part and vacated and remanded in part after concluding that the Court erred by applying a two-level sentencing enhancement for abuse of trust. United States v. Ghertler, 605 F.3d 1256 (11th Cir. 2010).

---

[6] Paragraph 15 of the original Indictment stated: "It was a further part of the scheme and artifice that the defendant would and did, by his false representations, deceive fourteen businesses and attempt to obtain approximately $956,500, and successfully would and did obtain approximately $766,500 from those victims." (Crim. Case Doc. 18 ¶ 15).

[7] Petitioner fell within Criminal History Category VI, and a Total Offense Level of 29 was calculated, as follows: Base Offense Level 7 under USSG § 2B1.1(a)(1); an increase of 14 levels under USSG § 2B1.1(b)(1)(H) for a loss amount of more than $400,000 but less than $1 million; an increase of 2 levels under USSG § 2B1.1(b)(2)(A) for ten or more victims; an increase of 2 levels under USSG § 2B1.1(b)(9) for sophisticated means; an increase of 2 levels under USSG § 3B1.3 for abuse of trust; and an increase of 2 levels under USSG § 3C1.1 for obstruction of justice.

On remand, Petitioner was granted leave to proceed pro se for his resentencing hearing. (See Crim. Case Docs. 153 & 160). At resentencing on November 18, 2010, after calculating a revised Guidelines sentencing range of 130 to 162 months, [8] the Court sentenced Petitioner to eight concurrent 162-month terms of imprisonment. (Crim. Case Docs. 200 & 217). [9] Petitioner appealed, but he later moved to voluntarily dismiss his appeal. (See Crim. Case Doc. 222). The Eleventh Circuit Court of Appeals granted the motion to dismiss on April 9, 2012. (Id.). Petitioner then filed the § 2255 motion (Doc. 1) that is now before the Court.

## II. Legal Standard

The Supreme Court of the United States has established a two-part standard that governs claims of ineffective assistance of counsel by convicted persons. "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id.

To establish the first element of this standard, the defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. And, to establish prejudice to the

[8] After removal of the two-level abuse of trust enhancement, Petitioner had an adjusted Total Offense Level of 27 on resentencing, and his Criminal History Category remained at VI.

[9] Judgment was entered on November 22, 2010, (Crim. Case Doc. 203), and a corrected Judgment was entered on December 20, 2010. (Crim. Case Doc. 210).

4

defense, the defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.; see also id. at 694 (explaining that to show that deficient performance prejudiced the defense, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.").

The prejudice requirement of the Strickland inquiry is modified when the claim is a challenge to a guilty plea based on ineffective assistance. See Hill v. Lockhart, 474 U.S. 52, 58-59 (1985). When such a claim is at issue, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59.

A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690; accord Gates v. Zant, 863 F.2d 1492, 1497 (11th Cir. 1989). As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. Strickland encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

5

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under these rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).

**III. Analysis**

**A. Claim One**

In his first claim, Petitioner alleges that trial counsel rendered ineffective assistance by misrepresenting that several witnesses were unavailable to testify. (Doc. 1 at 4; Doc. 9 at 5). Petitioner maintains that he wanted defense counsel to call Scott Traut, Melanie Porter, Jose Real, Blanca Real, Michelle Real, Blanca Sonia Veja, Agent Thompson, Detective Morton, an employee from a halfway house, and an employee from Regions Bank as witnesses during his initial sentencing hearing. (Doc. 9 at 5-6). Petitioner contends that these witnesses would have cast doubt on the Government's case and testified that he did not commit the crimes. (Id. at 5-8).

Petitioner's filings are devoid of any evidence demonstrating that these witnesses would have testified in the manner Petitioner suggests. "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted); accord Dottin v. Sec'y, Dep't of Corr., No. 8:07-CV-884-T-27MAP, 2010 WL 3766339, at *6 (M.D. Fla. Sept. 16, 2010).

Petitioner's claims are speculative because he has not presented affidavits from any

potential witnesses. And, petitioner has not established that there is a reasonable probability that his sentence would have been different if these witnesses had testified. Therefore, Petitioner has not made the requisite factual showing, and his self-serving speculation will not sustain this claim of ineffective assistance of counsel. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating that vague, conclusory, speculative, and unsupported claims cannot support relief for ineffective assistance of counsel). Accordingly, Claim One is denied.

**B.     Claim Two**

In Claim Two, Petitioner asserts that trial counsel rendered ineffective assistance by failing to advise him of a plea offer. (Doc. 1 at 4; Doc. 9 at 9). Petitioner contends that in 2009—after he was initially sentenced—he learned that the Government had made a pre-indictment plea offer that defense counsel did not communicate to him. He claims that if counsel had made him aware of that offer, he would have accepted it because he would have received a substantially lower sentence. (Doc. 9 at 9-10).

The Sixth Amendment right to effective assistance of counsel extends to plea negotiations. Missouri v. Frye, 132 S. Ct. 1399, 1404-08 (2012); Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012). "[D]efense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Frye, 132 S. Ct. at 1408. In order to show prejudice in cases about plea negotiations under the test set forth in Strickland, a defendant must demonstrate a reasonable probability that: (1) he would have accepted a plea offer but for counsel's ineffective assistance; (2) the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it; and (3) the plea would have resulted in a

lesser charge or lower sentence. Id. at 1409; Lafler, 132 S. Ct. at 1384-85.

The Government argues that Petitioner "cannot establish that he would have accepted the plea agreement or prejudice[10] because the plea agreement and the plea that he entered . . . have left him in the same position." (Doc. 15 at 13). The Court agrees that—even assuming that defense counsel failed to convey the plea offer to Petitioner and that Petitioner would have accepted the plea agreement [11] —Petitioner has not

---

[10] The Government does not dispute Petitioner's contention that a pre-indictment plea offer was conveyed to trial counsel. Indeed, the Government attached the proposed Plea Agreement from that offer to its response to Petitioner's motion. (Doc. 15-2). The Government states: "The plea agreement was sent to trial counsel before any indictment was returned. After not hearing back from trial counsel, the case was presented to the grand jury for indictment. There was no other plea agreement from the Government to [Petitioner]." (Doc. 15 at 13-14).

Petitioner has attached to his memorandum a response from his trial counsel to a complaint to The Florida Bar that Petitioner made regarding the plea agreement issue. (Ex. C to Doc. 9, at 1). In that document, trial counsel stated:

I was not told of any plea offer that I did not communicate to [Petitioner].

My notes do not show any plea offer other than that the prosecutor would consider, but not promise, recommending that the judge reduce [Petitioner's] guideline recommendation for "acceptance of responsibility" (even though [Petitioner] had absconded after the court ordered his release and was caught seven months later coming back from Mexico) and that the defense could argue that the total amount of loss was less than $1,000,000.00 (because the sentencing guidelines recommend a longer sentence if the total loss is more than that).

In fact, when I tried to negotiate a better result for [Petitioner], the prosecutor refused and said that [Petitioner] was "incorrigible".

(Id.).

[11] Petitioner refused to plead guilty to the initial Indictment, which referred to fourteen victim businesses, but he was willing to plead guilty to the charges in the Superseding Indictment, which removed the reference to fourteen victims and instead only mentioned the named seven. The pre-indictment plea agreement would have required Petitioner to admit conduct as to fourteen victims and a loss amount of $956,500. (See

demonstrated that a reasonable probability exists that he would have received a lesser sentence had he accepted the pre-indictment plea offer.

Although the pre-indictment plea offer pertained to the Criminal Complaint (Crim. Case Doc. 1), which charged one count of wire fraud, the proposed plea agreement covered the same relevant conduct that was considered in imposition of Petitioner's sentence for the charges in the Superseding Indictment to which Plaintiff ultimately pled guilty. The plea agreement discussed—and would have required Petitioner to admit to defrauding or attempting to defraud—the same fourteen intended victims discussed in the Presentence Investigation Report ("PSR"). (See Plea Agreement, Doc. 15-2, at 11-17; see also PSR at 1-9). Moreover, in the pre-indictment plea agreement the Government stated that it would seek an enhancement for obstruction of justice, (Doc. 15-2 at 3), an enhancement that was applied when Petitioner was sentenced after entering a plea to the charges in the Superseding Indictment. The agreement also stated that because of Petitioner's obstruction of justice, the Government would object to a reduction for acceptance of responsibility. (Id. at 3-4). Petitioner's Guidelines score and resulting sentencing range under the plea agreement would have been the same as at the initial sentencing and at resentencing after remand.[12] Although Petitioner contends that he

---

Doc. 15-2 at 11-17). These facts weigh strongly against any finding that Petitioner would have accepted this plea offer.

[12] Petitioner's Guidelines score still would have been 27 without the two-level abuse of trust enhancement or 29 with that enhancement. The Base Offense Level and the enhancements for ten or more victims, loss amount range, sophisticated means, and obstruction of justice would have remained the same. Although Petitioner asserts that "sophisticated means and the more than ten victims enhancements were dropped by the government in exchange for the agreement," (Doc. 19 at 14), this assertion is not supported by the plea agreement (Doc. 15-2). The plea agreement did not mention sophisticated means or victim enhancements, but it did provide for restitution to twelve victims and admission to a factual basis involving fourteen victims. And, the plea agreement also

would have faced a lower Guidelines sentencing range had he accepted the pre-indictment plea offer, that assertion is incorrect or, at best, speculative.[13] See Tejada, 941 F.2d at 1559. Because Petitioner has not shown prejudice, Claim Two is denied.

### C. Claim Three

Petitioner next alleges that trial counsel failed to advise him of the true consequences of his plea of guilty to the charges in the Superseding Indictment. (Doc. 1 at 4). Petitioner maintains that defense counsel did not inform him that conduct beyond that described in the Superseding Indictment, including conduct toward other victims, would be considered at sentencing and could increase his sentence. (Doc. 9 at 18-23). This claim is refuted by the transcript of Petitioner's change-of-plea hearing before the

---

specifically provided that whatever recommendations the Government made to the Court regarding the sentence are "not binding on the Court" in any event and that neither Petitioner nor the Government would be allowed to withdraw from the plea agreement if the recommendations were not accepted by the Court. (Doc. 15-2 at 3).

[13] Petitioner asserts in his reply (Doc. 19) that under the proposed plea agreement he would have scored a total offense level of 23, which, with a Criminal History Category of VI, would have yielded a Guidelines sentencing range of 92 to 115 months' imprisonment. (See Doc. 19 at 15). Petitioner maintains that he would not have received 2-level increases for sophisticated means and for ten or more victims. However, this contention is purely speculative, as he still would have been subject to those enhancements even if he had accepted the plea offer.

In his initial memorandum, Petitioner also asserted that he could have received a 2-level decrease for acceptance of responsibility under USSG § 3E1.1 if he had accepted the plea offer. (See Doc. 9 at 10). However, in light of the facts that the proposed plea agreement specifically stated that the Government would "argue that the defendant is not entitled to a reduction for acceptance of responsibility," (Doc. 15-2 at 4), and that Petitioner fled after being released on bond before trial, his assertion that he would have received an acceptance-of-responsibility adjustment under USSG § 3E1.1 is indeed dubious. See USSG § 3E1.1 cmt. n.4 (noting that "[c]onduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct"). He did not receive an adjustment for acceptance of responsibility when he ultimately pled guilty without a plea agreement.

magistrate judge.

Although Petitioner entered a plea of guilty to the crimes charged in the Superseding Indictment, which named seven victims, rather than the initial Indictment, which named those same seven victims but also referred to "fourteen businesses" that Petitioner deceived, (see Crim. Case Doc. 18 ¶ 15), defense counsel and the Government both emphasized in open court during the plea hearing that at sentencing the Government intended to offer evidence of additional victims and other relevant conduct. Defense counsel stated during the plea hearing that "we are pleading specifically to those counts that are alleged in the indictment" but that the Government had indicated its intention to prove other victims at the sentencing hearing. (Tr. of Plea Hr'g, Crim. Case Doc. 62, at 2). At the end of the plea hearing, the Assistant United States Attorney ("AUSA") stated: "I do just want to reiterate what [defense counsel] said at the beginning of the hearing, and that is that the superseding indictment does not in any way change the government's intention to prove the fraud committed against seven additional victims in the total amount of $555,000 at sentencing." (Id. at 25-26). The magistrate judge responded, "I understand, and I think the defendant's aware of that. It wasn't something he wanted to plead to." (Id. at 26). At no point did Petitioner tell the magistrate judge that he did not understand these statements, and the fact that Petitioner would not agree to plead guilty to deceiving fourteen businesses does not mean that he did not understand that the Government would attempt to prove at sentencing that there were more than the seven victims as to which Petitioner admitted guilt.

Furthermore, during the plea hearing the magistrate judge advised Petitioner that he faced up to twenty years in prison and that his sentence would be based on many

11

factors, including his actual conduct, the victims, obstruction of justice, the loss amount, and his criminal history. (Id. at 9-10). The magistrate judge specifically explained to Petitioner: "I gathered from [defense counsel's] remarks . . . there may be a dispute about the . . . number of victims and the amount of loss that's involved. And the only thing that you're pleading to today are the specific things in that superseding indictment, but it may be that there will be other things that come into the record that may have a bearing on these issues that the district judge determines, that may affect your sentence. Do you understand that?" (Id. at 10). Petitioner responded that he understood. (Id.).

It is clear from the hearing transcript that Petitioner was informed by his own counsel, counsel for the Government, and the magistrate judge that other victims and losses could bear on the sentence he received. Petitioner had an opportunity to ask questions if he did not understand, but he did not do so. Petitioner's representations to the Court that he understood the consequences constitute a "formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Petitioner's assertion that he did not understand the consequences of his plea is without merit, and this claim is denied.

## D.   Claim Four

In Claim Four, Petitioner asserts that trial counsel rendered ineffective assistance by advising him that a motion to reopen evidence had been filed and denied despite the fact that counsel never filed the motion. (Doc. 1 at 4-5; Doc. 9 at 14-15). This claim is without merit.

As discussed in further detail later with regard to Claim Seven, during sentencing

12

the Court heard conflicting testimony about whether statements that Petitioner made to FBI agents in New Mexico in January 2008 were coerced by threats. Petitioner testified that FBI Agent Larry Houpt threatened him and family members, but Agent Houpt denied making any such threats. Petitioner argues in Claim Four that trial counsel failed to file a motion to reopen evidence after the Court allowed the Government to reopen its case at sentencing to allow Agent Houpt to testify. (Doc. 1 at 5). Petitioner contends that trial counsel told him a motion to reopen was filed but was denied, when in fact no such motion was filed.

As noted by Petitioner, the Court stated on Day 4 of the sentencing hearing, December 23, 2008, that the defense would be allowed to reopen its case if it had evidence to contradict Agent Houpt's testimony. (Id.; see also Tr. of Sentencing Hr'g Day 4, Doc. 128, at 12). After obtaining records regarding telephone calls made the night that Petitioner gave statements to the FBI agents, defense counsel argued in the final sentencing memorandum (Crim. Doc. 86)—submitted prior to the fifth day of the sentencing hearing— that Agent Houpt's testimony as to when phone calls were made was inaccurate, attempting to cast doubt on Agent Houpt's credibility. Defense counsel attached the phone records to that memorandum as well. (See Doc. 86-1). Those records were considered by the Court at sentencing, as were arguments from both sides about the timing of the telephone calls. (See Tr. of Sentencing Hr'g Day 5, Crim. Case Doc. 112, at 6-11).

Although Petitioner now contends that counsel was deficient in not filing a motion to reopen and in misrepresenting the status of that motion, it was not necessary for defense counsel to file a motion to reopen evidence because the Court had already ruled during the sentencing hearing that the defense could present evidence to rebut Agent Houpt's

testimony.[14] And, such evidence was accepted and considered by the Court.

Petitioner also asserts that trial counsel should have called witnesses and played

recordings of phone conversations to impeach Agent Houpt's testimony, but none of the

evidence presented by Petitioner establishes prejudice from counsel's decisions regarding

what evidence to present and what arguments to make. During their phone calls prior to

the last day of the sentencing hearing, Petitioner and trial counsel discussed at length what

evidence they had to impeach Agent Houpt, and trial counsel did present evidence that

bore on Agent Houpt's credibility.[15] The record reflects that defense counsel investigated

and considered the matter at length and raised the issue in the defense sentencing

---

[14] In recorded telephone calls between Petitioner and trial counsel prior to the last day of the sentencing hearing, Petitioner inquired as to the motion to reopen. (Attach. to Crim. Doc. 198, CD labeled "3-4-2009," first and third telephone calls). Trial counsel did state during those conversations that the motion to reopen had not been granted and that he thought it had been denied as moot, adding that "nevertheless if we present some evidence it may make a difference." (Id. first telephone call; see also id. third telephone call). Although trial counsel's response was not accurate, the defense was permitted to present evidence in rebuttal of Agent Houpt's testimony, and Petitioner has not established prejudice from any misstatement by trial counsel in this regard.

[15] During their phone calls, Petitioner and trial counsel discussed telephone records and recordings of phone calls. Trial counsel noted at one point that the telephone records might actually confirm Agent Houpt's testimony, and he noted that the issue of when the phone calls were made was not as significant as Petitioner made it out to be. (Attach. to Crim. Doc. 198, disk labeled "3-4-2009," third telephone call). Petitioner also urged defense counsel to seek to introduce a recording of Petitioner telling defense counsel the day after he gave the incriminating statements in January 2008 that he was threatened by the agents. Defense counsel aptly noted in response that petitioner had a motive not to be truthful and that he was extremely vague in that phone call about being threatened. (Id. first telephone call). The Court has reviewed all of the recorded phone calls submitted by Petitioner in both his criminal case and with his motion to vacate, including the phone call in which Petitioner told trial counsel that threats had been made (Attach. to Crim. Doc. 198, disk labeled "Ghertler Audio," twenty-second telephone call). Petitioner's vague statements about being threatened in a phone call that he knew was being recorded would not have altered this Court's assessment of Petitioner's credibility versus that of Agent Houpt with regard to whether Petitioner's statements were coerced.

14

memorandum. Even if counsel had presented every piece of evidence suggested by Petitioner, a reasonable probability does not exist that either the Court's credibility determination or the outcome of the sentencing would have been different. Consequently, this claim is denied.

### E.   Claim Five

Petitioner asserts in Claim Five that trial counsel failed to: investigate bank and telephone records, "read 302s,"[16] contact potential witnesses, "determine if submitted evidence was factual," and confirm his alibi. (Doc. 1 at 5). Although this claim is listed in his motion, Petitioner does not argue this issue in his memorandum, reply, or other filings.

Petitioner has not supported this claim with any facts, nor does he state how counsel's alleged deficiencies resulted in prejudice. Petitioner's allegations in this claim are vague and conclusory and cannot support a claim for ineffective assistance of counsel. See Tejada, 941 F.2d at 1559. Accordingly, Claim Five is denied.

### F.   Claim Six

In Claim Six, Petitioner argues that trial counsel was ineffective for failing to request a downward departure under United States Sentencing Guidelines ("USSG") § 5K2.13 based on diminished capacity. (Doc. 1 at 5; Doc. 9 at 24-25; Doc. 19 at 19-20). This claim is without merit.

The policy statement in USSG § 5K2.13 upon which Petitioner relies provides that "[a] downward departure may be warranted if (1) the defendant committed the offense while

---

[16] Petitioner does not explain in his filings what a "302" is, but the record reflects that a 302 is an FBI form for a memorandum of interview. (See Tr. of Sentencing Hr'g Day 1, Crim. Case Doc. 126, at 11 (Test. of FBI Agent Abelardo Vecino) (explaining that "an FD302 . . . is a memorandum of interview"); see also Gov't's Sentencing Ex. 52 (FD 302 form for January 10, 2008 interview of Petitioner)).

15

suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense." The Application Note to this policy statement explains that "'[s]ignificantly reduced mental capacity' means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." USSG § 5K2.13 cmt. n.1 (2008). Petitioner relies on subpart (B) of this definition and cites a comment made at sentencing by the AUSA that Petitioner was "unable to control the impulse to steal" and the Court's alleged agreement with that assessment. (See Doc. 9 at 24).

During the sentencing hearing, the AUSA stated:

> He's a con artist, but the one true statement that he's made is the statement in his written statement that he cannot stop. It's an impulse he cannot control. And that's the one statement that I believe coming out of his mouth, that he cannot stop, and that the only way to make him stop and to protect the public from his criminal impulses is to keep him in jail for as long as the law allows. And for that reason I request a high end sentence.

(Tr. of Sentencing Hr'g Day 5, Crim. Case Doc. 112, at 26). Shortly thereafter, while pronouncing Petitioner's sentence, the Court stated to Petitioner:

> It may be that you're right, that you can't help it, that you're just compelled to do it. It may be some addiction to adrenalin[e] that you, an adrenalin[e] rush you get when you're doing something that's outside the law. But I'm hopeful that you'll get some other sense of satisfaction by putting your skills and your intellect to work within the law. It's going to be difficult, but you know people or know of people who have turned around and made a contribution having had a background similar to yours. I have to tell you, it is, it's mind boggling to hear of how you perpetrated these crimes. You have to have tremendous insight, sales. You could be a wealthy man, you know, having a career in sales. You know all this. You know all this. . . .
>
> But the thing is if you get out and you're still committed to this course of action, you know, it only gets worse. You're already a category six. It

16

doesn't go any higher, but if you commit crimes in the future, you will be treated more severely because of your criminal record.

(Id. at 29-30).

Petitioner's contention that the comments of the AUSA and the Court supported a downward departure based on diminished capacity is rejected. As noted by the Government in its response memorandum, "[t]he characterization of [Petitioner's] 'impulse' was not in a medical or clinical sense or to establish a 'significantly reduced mental capacity' as USSG § 5K2.13 allows, but rather as a reason why a lengthy prison sentence was necessary to protect the public from future crime." (Doc. 15 at 17). And, during the plea hearing and sentencing hearing, Petitioner advised the Court that he was not under the influence of any drugs or alcohol, his competency had never been questioned, and he was not under the care of a psychiatrist or psychologist for any emotional or mental disorder. (Crim. Case Docs. 62 at 4-5 & 125 at 2-3). Petitioner has not provided, and the record does not contain, any evidence demonstrating that he had a significantly reduced mental capacity that warranted a downward departure.

Moreover, after setting forth the diminished capacity basis for downward departure, USSG § 5K2.13 further provides: "However, the court may not depart below the applicable guideline range if . . . the defendant's criminal history indicates a need to incarcerate the defendant to protect the public." Petitioner's extensive criminal history—which placed him in Criminal History Category VI, the highest possible category—clearly indicated a need to incarcerate him to protect the public, as argued by the AUSA. Thus, this basis for downward departure would not have been available to him in any event. Petitioner has not shown deficient performance or prejudice. Accordingly, Claim Six is denied.

17

### G.    Claim Seven

In Claim Seven, Petitioner alleges that trial counsel was ineffective for failing to argue that his confession was obtained in violation of the Fifth Amendment because it was coerced through threats regarding his family and friends. (Doc. 1 at 5; Doc. 9 at 3; Doc. 41 ¶ 7). Although Petitioner does not elaborate on this claim in his filings,[17] this claim is refuted by the record.   Petitioner's trial counsel did indeed argue that Petitioner's confession was coerced by threats in violation of the Fifth Amendment.

The confession to which Petitioner alludes was made to FBI agents in New Mexico shortly after Petitioner was re-arrested on January 8, 2008. (See Doc. 9 at 3 (asserting that the statement he made in New Mexico was coerced by threats); Doc. 41 ¶ 7 (same)). On June 6, 2008, prior to Petitioner's scheduled July trial, counsel filed a Motion to Suppress Statements in which he argued for suppression from trial of, among others, the January 8, 2008 statements. (Crim. Case Doc. 34). In that motion, counsel argued that Petitioner "gave allegedly incriminating statements only after the agents who questioned him threatened to arrest some of his friends and members of his family." (Id. at 2; see also id. at 3 (asserting that on January 8, 2008 "the law enforcement officers threatened his friends and relatives with jail")). When Petitioner pleaded guilty on July 28, 2008, just prior to trial, that motion to suppress became moot, as was explained to Petitioner at that time

---

[17] Petitioner listed this issue in his motion as part of his ineffective assistance of counsel ground, (see Doc. 1 at 5), but only vaguely alluded to his confession in his memorandum, (see Doc. 9 at 3 (stating that "the confession obtained by authorities in New Mexico was coerced by threats"). In his Declaration, Petitioner states: "The statement I made in New Mexico to FBI Agents was coerced by their threats of arresting Patricia Ghertler [Petitioner's mother], Blanca Vega [Petitioner's wife], and Michelle Reed [sic] [Petitioner's girlfriend]." (Doc. 41 ¶ 7). He does not otherwise expound on this claim, and the Government did not address it in its Response (Doc. 15).

by the magistrate judge who heard the plea. (See Tr. of Plea Hr'g, Crim. Case Doc. 62, at
13-14).

Then, prior to Petitioner's sentencing, on September 22, 2008, trial counsel filed a
Motion to Exclude Statements from Sentencing, arguing that Petitioner's statements to law
enforcement on January 8 violated his Sixth Amendment right to counsel because he was
already represented. (See Crim. Case Doc. 65). During the sentencing hearing, both
Petitioner and one of the New Mexico-based FBI agents, Larry Houpt, testified regarding
the circumstances of Petitioner's January 8 statements, and arguments based on both the
Fifth Amendment and the Sixth Amendment were made by counsel and considered by the
Court. (See Tr. of Sentencing Hr'g Day 2, Crim. Case Doc. 126, at 127-38 (Test. of
Petitioner); id. at 161-169 (argument of counsel and comments by the Court); Tr. of
Sentencing Hr'g Day 3, Crim. Case Doc. 127, at 4-67 (Test. of Agent Houpt), 116 (Test. of
Petitioner), Tr. of Sentencing Hr'g Day 4, Crim. Case Doc. 128, at 6-7 (Test. of Petitioner),
12-42 (argument of counsel and ruling by the Court); & Tr. of Sentencing Hr'g Day 5, Crim.
Case Doc. 112, at 6-11 (further argument of counsel)).

After hearing the testimony and argument, the Court found no violation of the Fifth
or Sixth Amendment with regard to Petitioner's statements. Addressing the argument that
Petitioner's confession was coerced by threats, the Court expressly stated:

> . . . I do think that to the extent that the Fifth and Sixth Amendment are
> to protect against coerced statements, that the court should be concerned to
> make sure that statements are freely and voluntarily made, regardless of the
> context.
>
> Having said that, I do not believe that there is any evidence that the
> statements were the product of coercion or threats or false promises other
> than the [Petitioner's] own statement, which I find not to be credible, that
> having to do with threats of reprisal against family members.

19

(Tr. of Sentencing Hr'g Day 4, Crim. Case Doc. 128, at 39). The Court reiterated this conclusion a few moments later: "I repeat that the court specifically finds that no threats or promises were made to persuade the [Petitioner] to make the statements, there's no basis to exclude the defendant's statements from evidence, and the motion is denied." (Id. at 42).

In sum, it is clear from the record that trial counsel argued that Petitioner's confession was coerced by threats, and Petitioner's assertions to the contrary are baseless. The fact that the Court ruled against Petitioner on this issue does not support his ineffective assistance of counsel claim. Claim Seven is therefore denied.

## H.   Claim Eight

Petitioner asserts in Claim Eight that trial counsel rendered ineffective assistance by failing "to argue that the order of restitution and loss amount fell outside the offense of conviction." (Doc. 1 at 5).[18] Petitioner asserts that "[r]estitution was ordered for acts outside the offenses of conviction," that this was improper, and that as a result he was sentenced based on an improperly increased offense level. This claim is without merit.

Petitioner asserts that "pursuant to Hughey v. United States, 495 U.S. 411 (1990), [he] could only be sentenced to a loss amount of $216,000.00." (Doc. 19 at 3). It is not clear how Petitioner calculated that figure,[19] and his reliance on Hughey is misplaced. In

---

[18] Petitioner did not mention this claim in his memorandum (Doc. 9), and the Government did not address it in its Response (Doc. 15). In his Reply, Petitioner raised the issue again and asserted it not only as to trial counsel but also as to appellate counsel. (See Doc. 19 at 3).

[19] The Court has attempted, without success, to deduce how Petitioner came up with the $216,000.00 figure. The actual loss from seven businesses mentioned in the Superseding Indictment alone was $251,500.00, and intended loss as to those businesses was $461,500.00. (See PSR at 1-9; Superseding Indictment, Crim. Case Doc. 41).

that case, the Supreme Court did hold that the Victim and Witness Protection Act of 1992, 18 U.S.C. §§ 3579, 3580, "authorizes[s] an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction." 495 U.S. at 413. Hughey is not the end of the analysis, however. Since that case was decided, restitution statutes have been amended and the Eleventh Circuit Court of Appeals has explained that Hughey no longer controls this question.

Petitioner's restitution was ordered pursuant to 18 U.S.C. § 3663A, which mandates that the court order "that the defendant make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1). "Victim" is defined as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." Id. § 3663A(a)(2).

In United States v. Brown, 665 F.3d 1239 (11th Cir. 2011), the Eleventh Circuit noted that § 3663A's definition of "victim" is the same as the definition in § 3663, which "is a result of Congress's reaction to the Supreme Court's narrow interpretation of the statute's original language in Hughey." 665 F.3d at 1252. The Brown court then explained: "Courts have agreed that, in light of the expanded statutory language, restitution orders for conduct closely related to the offense of conviction are appropriate under either § 3663 or 3663A(a)(2), in addition to the specific conduct for which the defendant was convicted." Id.; see also United States v. Valladares, 544 F.3d 1257, 1270 (11th Cir. 2008) (noting that relevant conduct may be used in calculating restitution).

Moreover, relevant conduct is properly considered in calculating the Guidelines

21

sentencing range, and the amount of loss from relevant conduct is properly included in calculating the amount of loss for sentencing purposes. See USSG § 1B1.3 (explaining what constitutes relevant conduct); United States v. Hamaker, 455 F.3d 1316, 1336 (11th Cir. 2006) (noting that USSG § 1B1.3 "instructs district courts to consider not merely the charged conduct, but rather all 'relevant conduct,' in calculating a defendant's offense level"); United States v. Cobb, 571 F. App'x 851, 853 (11th Cir. 2014) ("The Guidelines . . . require the district court to consider all relevant conduct when determining the loss enhancement . . . ."); United States v. Trujillo, 561 F. App'x 840, 845 (11th Cir. 2014) ("The district court retains broad discretion in calculating loss[] and may rely on all relevant conduct, including uncharged conduct, that the government proves by a preponderance of the evidence.").

Petitioner pled guilty to eight counts of committing wire fraud in violation of 18 U.S.C. § 1343, which involves a "scheme or artifice to defraud." The Superseding Indictment referred to conduct occurring from July 2006 through December 2007, and the restitution and loss amounts were calculated using both the victim companies specifically named in the Superseding Indictment as well as other victims of Petitioner's scheme during that time period. Those other victims were properly includable both in the restitution amount and in the loss amount. Claim Eight is therefore without merit.

**I.    Claim Nine**

In Claim Nine, Petitioner contends that trial counsel was ineffective for failing to "obtain exculpatory recordings of telephone calls from various county jails." (Doc. 1 at 5-6). Petitioner does not support this claim with any facts, explain what exculpatory evidence was allegedly contained in these recordings, or state how he has been prejudiced by

22

counsel's alleged failure to obtain them. Petitioner's bare allegations are vague and conclusory and cannot support a claim for ineffective assistance of counsel. See Tejada, 941 F.2d at 1559. Moreover, the Court has reviewed all of the recordings of telephone conversations provided by Petitioner[20]—which were made from three different county jails—and the Court did not discern any exculpatory evidence on these recordings. This claim is denied.

## J. Claim Ten

In Claim Ten, Petitioner asserts that counsel was ineffective for telling him that he was not entitled to a suppression hearing prior to pleading guilty. (Doc. 1 at 6; Doc. 19 at 3). Petitioner does not support this claim with any facts, nor does he argue how counsel's alleged deficiencies resulted in prejudice. Petitioner's bare allegations are vague and conclusory and cannot support a claim for ineffective assistance of counsel. See Tejada, 941 F.2d at 1559. In any event, as discussed earlier, the Court did conduct a suppression hearing within the sentencing hearing, and after hearing competing testimony the Court ruled against Petitioner and declined to suppress his statements. This claim is without merit and is denied.

## K. Claim Eleven

In Claim Eleven,[21] Petitioner raises several arguments regarding ineffectiveness of appellate counsel. Petitioner asserts that appellate counsel failed to: (1) argue that his confession was coerced, (2) argue that his sentence enhancement for ten or more victims was inappropriate, and (3) file a petition for writ of certiorari. (Doc. 1 at 7). Petitioner also

[20] (Ex. E to Doc. 9; Attachs. to Crim. Case Doc. 198).

[21] This claim is "Ground Two" of Petitioner's motion. (See Doc. 1 at 7; Doc. 9 at 26).

23

contends that his appellate attorney appointed after resentencing was ineffective for failing to review the record and for filing a frivolous appeal. (Id.).

"Claims of ineffective assistance of appellate counsel are governed by the same standards applied to claims of ineffective assistance of trial counsel under Strickland." Sairras v. Fla. Dep't of Corr., 496 F. App'x 28, 34 (11th Cir. 2012) (citing Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991)). The Sixth Amendment does not require appellate counsel to raise every non-frivolous issue. Id. Appellate counsel must be allowed to exercise his or her reasonable professional judgment in selecting those issues most promising for review, and "[a] brief that raises every colorable issue runs the risk of burying good arguments." Jones v. Barnes, 463 U.S. 745, 753 (1983). To determine if prejudice occurred, the Court must first review the merits of the omitted claim. See Heath, 941 F.2d at 1132. Counsel's performance will be deemed prejudicial if the Court concludes that "the neglected claim would have a reasonable probability of success on appeal." Id.

### 1. Coerced Confession

Petitioner contends that appellate counsel should have argued that his confession was coerced and that he "failed to do so" despite stating that he would assert this argument. (Doc. 9 at 26 (citing Ex. D to Doc. 9); see also Doc. 1 at 7). Petitioner is not entitled to relief on this claim.

As noted earlier in the discussion of Claim Seven, trial counsel argued during sentencing that Petitioner's confession had been coerced and sought to exclude Petitioner's statements on that basis. Petitioner testified regarding the alleged threats, and the Government presented contrary testimony from FBI Agent Houpt. The Court made a finding that Agent Houpt's testimony was credible and that Petitioner's testimony was not

24

credible. (Tr. of Sentencing Hr'g Day 4, Crim. Case Doc. 128, at 39-42). The Court denied the motion to exclude, concluding that Petitioner voluntarily spoke with Agent Houpt after waiving his right to counsel and that the statements were not a product of any coercion, threats, or promises. (Id. at 39, 42).

The Eleventh Circuit "afford[s] substantial deference to the factfinder's credibility determinations, both explicit and implicit." United States v. Lewis, 674 F.3d 1298, 1303 (11th Cir. 2012). Because this Court made an explicit factual finding with regard to credibility, there is no reasonable probability that an argument that the confession was coerced would have been successful on appeal. Accordingly, this claim is denied.

### 2. Number of Victims

Petitioner next contends that appellate counsel should have argued that the Court erred by enhancing his sentence for more than ten victims. This claim is without merit.

USSG § 2B1.1(b)(2)(A) provides for a two-level increase to a base offense level if the offense involved ten or more victims, and that increase was applied in calculating Petitioner's Guidelines score and sentencing range. There was abundant evidence to establish that the two-level enhancement for ten or more victims was appropriately applied in Petitioner's Guidelines score calculation. Petitioner pled guilty to charges of defrauding seven businesses: Allstate Insurance Company, Alcoa Inc., Bristol Myers Squibb, Lockheed Martin, Science Applications International Corporation, Winston & Strawn LLP, and Wyeth Pharmaceuticals. (See Superseding Indictment, Crim. Case Doc. 41; Tr. of Plea Hr'g, Crim. Case Doc. 62). Additionally, in his testimony at sentencing Petitioner admitted that he defrauded Ropes & Gray LLP, (see Tr. of Sentencing Hr'g Day 3, Crim. Doc. 127, at 97-101), and J.P. Morgan Trust Co., (see id. at 107). He also admitted in that

25

testimony to making notes regarding a fraud on HSBC Bank, though he denied completing that transaction, (see id. at 109; Tr. of Sentencing Day 4, Crim. Doc. 128, at 8; see also Govt's Sentencing Ex. 32). The Government presented credible witness testimony at sentencing regarding Petitioner's involvement in the HSBC fraud, (see Tr. of Sentencing Day 1, Crim. Doc. 125, at 59-99), including the testimony of a courier who identified Petitioner in court as the man who picked up $65,000 in cash from him at Yeehaw Junction on the Florida Turnpike, (see id. at 81-87). This evidence alone was enough to establish the ten-victim threshold.

Additionally, the Government presented persuasive evidence at sentencing of Petitioner's defrauding of three other businesses—Wachovia Bank, National City Bank, and Bank of New York Mellon. (See id. at 100-51). And, in a written statement he made in January 2008 after his arrest, Petitioner admitted defrauding J.P. Morgan, Wachovia, National City, Bank of New York, HSBC, three of the businesses mentioned in the charges in the Superseding Indictment, and two others. (See Gov't's Sentencing Ex. 34).

In light of the abundant evidence regarding the number of victims, including Petitioner's own admissions, appellate counsel had no basis to challenge the Court's application of the USSG § 2B1.1(b)(2)(A) enhancement. Counsel cannot be faulted for failing to raise a claim that did not have a reasonable probability of success on appeal. This claim is denied.

### 3. Petition for Writ of Certiorari

Petitioner next argues that appellate counsel was ineffective for failing to file a petition for certiorari and informing him that he could not seek relief from the Supreme Court after his partially-successful appeal to the Eleventh Circuit until after he was

26

resentenced. This claim is also without merit.

Federal courts have noted that "[t]here is no 'right' to [certiorari] review." United States v. Johnson, No. 3:07cr77/MCR, 3:09cv196/MCR/EMT, 2012 WL 1802102, at *8 (N.D. Fla. May 17, 2012). Furthermore, to prevail on an ineffective assistance of appellate counsel claim on this basis, a petitioner must demonstrate that he "would have succeeded in obtaining a writ of certiorari" and "also a reasonable probability that []he would have obtained relief" on his claim. Steele v. United States, 518 F.3d 986, 988-89 (8th Cir. 2008); accord Johnson, 2012 WL 1802102, at *8. Nothing that Petitioner raised on appeal or argues now supports a conclusion that certiorari review would have been granted if a petition had been filed or that there was a reasonable probability that he would have obtained relief on his claim. Consequently, Petitioner has not established prejudice, and this claim is denied.

### 4. Failure to Review Record and Filing of Frivolous Appeal

Petitioner claims that his second appellate attorney, appointed after resentencing, failed to review the record and filed a frivolous appeal. This claim is conclusory because Petitioner does not allege what claims appellate counsel could or should have raised on direct appeal. See Tejada, 941 F.2d at 1559. Therefore, Petitioner has not shown deficient performance or prejudice with regard to this claim, and it is denied.

### L. Claim Twelve

In Claim Twelve, [22] Petitioner alleges prosecutorial misconduct. Specifically, Petitioner asserts that the AUSA: (1) withheld exculpatory evidence from law enforcement;

---

[22] This claim is "Ground Three" of Petitioner's motion. (See Doc. 1 at 9; Doc. 9 at 27 & 33).

27

(2) made affirmatively false statements at sentencing; (3) elicited and knowingly used false witness testimony at sentencing; (4) manipulated the grand jury; and (5) intimidated witnesses. (Doc. 1 at 9).

"In order . . . for a claim to be cognizable under § 2255, it generally must be based on a constitutional right." DiPietro v. United States, 251 F. App'x 606, 608 (11th Cir. 2007) (citing Richards v. United States, 837 F.2d 965, 966 (11th Cir. 1988)). "In some cases, prosecutorial misconduct may be so great as to constitute a violation of the Due Process Clause of the Constitution." Id. (citing Parker v. Head, 244 F.3d 831, 838 (11th Cir. 2001).

However, "[u]nder the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding. This rule generally applies to all claims, including constitutional claims." Lynn v. United States, 365 F.3d 1225, 1234 (11th Cir. 2004) (internal citations omitted). "A defendant can avoid a procedural bar only by establishing one of the two exceptions to the procedural default rule." Id. These two exceptions are: (1) "cause for not raising the claim or error on direct appeal *and* actual prejudice from the alleged error" and (2) "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Id. (further internal quotation omitted).

Petitioner did not raise a claim of prosecutorial misconduct on direct appeal. In response to the Government's argument that he failed to raise this claim previously, (see Doc. 15 at 6), Petitioner asserts that he sufficiently raised the issue of prosecutorial misconduct in a prior proceeding when he filed a Motion for Evidentiary Hearing (Crim. Case Doc. 186) in this Court when he was proceeding *pro se* after the Eleventh Circuit remanded his case for resentencing after his first appeal, (see Doc. 19 at 20). However,

28

Petitioner did not raise that issue in the first appeal, and neither the issue of prosecutorial misconduct nor the denial of Petitioner's Motion for Evidentiary Hearing was raised in Petitioner's second appeal. And, it appears from Petitioner's arguments that this claim could indeed have been raised on direct appeal. See, e.g., Lynn, 365 F.3d at 1235 ("In procedural default cases, the question is not whether legal developments or new evidence has made a claim easier or better, but whether at the time of the direct appeal the claim was available at all.").

Thus, in order to avoid the procedural bar, Petitioner must establish either (1) "cause for not raising the claim or error on direct appeal *and* actual prejudice from the alleged error" or (2) "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Id. at 1234. Petitioner does not assert that he is actually innocent, so he must establish cause and prejudice in order to be able to raise this claim. But, Petitioner does not make any argument regarding this exception in his filings.

Even if not procedurally barred,[23] Claim Thirteen fails on the merits. Petitioner's submissions do not support his contentions that the prosecution withheld exculpatory evidence, made affirmatively false statements at sentencing, elicited or knowingly used

---

[23] As explained in DiPietro, "[a] defendant may avoid the need to show cause and prejudice on a procedurally defaulted claim by raising a substantive issue of ineffective assistance of counsel for failure to assert the claim." 251 F. App'x at 608. Here, as in DiPietro, Petitioner "present[s] defaulted, substantive claims of prosecutorial misconduct . . . rather than a substantive ineffective-assistance-of-counsel claim" based on failure to raise a claim of prosecutorial misconduct. Id. As discussed earlier in this Order, Petitioner raised numerous claims of ineffective assistance of counsel, but none of them involved failure to argue prosecutorial misconduct. And, even if Petitioner asserted and established that ineffective assistance of counsel constituted cause, he would still have to "show that he was actually prejudiced by the failure to bring the claims in order to obtain review of them." Id. at 609.

false witness testimony at sentencing, manipulated the grand jury, or intimidated witnesses, let alone that a due process violation occurred. Petitioner is not entitled to relief on Claim Twelve.

## M. Claim Thirteen

In Claim Thirteen,[24] Petitioner alleges that the Court "abused [its] discretion by relying on unfounded facts and testimony to enhance the Petitioner[']s sentence for crimes he did not commit." (Doc. 1 at 10). Although Petitioner listed this issue in his motion, he does not elaborate on it or explain it in his other filings. And, in those filings, he attributes sentencing evidence errors not to the Court[25] but to counsel and the prosecution. (See, e.g., Doc. 9 at 1 ("Petitioner avers that he was in fact sentenced based upon false and unreliable information due to ineffective assistance of counsel and prosecutorial misconduct.")). To the extent that Petitioner is raising a claim that is cognizable on a § 2255 motion and is not procedurally barred, it is conclusory and is therefore denied. See Tejada, 941 F.2d at 1559.

## N. Other Allegations

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV. Evidentiary Hearing

Petitioner requests an evidentiary hearing on his claims. "A petitioner is entitled to

---

[24] This claim is "Ground Four" of Petitioner's motion. (See Doc. 1 at 10).

[25] Petitioner did raise this or a similar issue in the first direct appeal, arguing "that the district court erroneously considered unreliable information at sentencing" and "erred by enhancing his sentence based on evidence that was not sufficiently reliable." United States v. Ghertler, 605 F.3d 1256, 1260 & 1269 (11th Cir. 2010). The Eleventh Circuit considered and rejected Petitioner's argument. See id. at 1269-71.

30

an evidentiary hearing if he alleges facts which, if true, would warrant habeas relief. A petitioner is *not* entitled to an evidentiary hearing, however, when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." Tejada, 941 F.2d at 1559 (citations and quotation marks omitted). After examining the Petitioner's claims and the record, the Court concludes that Petitioner's contentions are conclusory or wholly incredible in the face of the record. Accordingly, Petitioner's request for an evidentiary hearing is denied.

**V. Conclusion**

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Petitioner's motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255 (Doc. 1) is **DENIED**.

2. The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

3. The Clerk of Court is directed to file a copy of this Order in Case No. 6:08-cr-90-Orl-28DAB and to terminate the motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255 (Doc. 229) pending in that case.

4. This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). Petitioner has failed to make a substantial showing of the denial of a constitutional right.[26] Accordingly, a certificate of appealability is **DENIED** in this case.

---

[26]Pursuant to the *Rules Governing Section 2255 Proceedings for the United States District Courts*, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." *Rules Governing Section 2255 Proceedings*, Rule 11, 28 U.S.C. foll. § 2255.

31

**DONE** and **ORDERED** in Orlando, Florida, on July 17, 2015.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Jonathan David Ghertler
Counsel of Record

32